2012 ME 114

Lisa LEVESQUE

v.

ANDROSCOGGIN COUNTY.

Supreme Judicial Court of Maine.

Argued: Sept. 11, 2012.

Decided: Oct. 4, 2012.

Guy D. Loranger, Esq. (orally), Nichols, Webb & Loranger, P.A., Saco, for appellant Lisa Levesque.

Peter T. Marchesi, Esq. (orally), and Cassandra S. Shaffer, Esq., Wheeler & Arey, P.A., Waterville, for appellee Androscoggin County.

Panel SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

LEVY, J.

[¶ 1] By her complaint filed in April 2010, Lisa Levesque alleged gender discrimination, constructive discharge, and retaliation against her former employer, Androscoggin County. The Superior Court (Androscoggin County, *MG Kennedy, J.*) granted a partial summary judgment in favor of Androscoggin County dismissing the counts of constructive discharge and gender discrimination. The retaliation claim proceeded to trial and the jury returned a verdict for Androscoggin County. Levesque now appeals from the partial summary judgment dismissing the constructive discharge claim. We affirm the judgment.

## I. BACKGROUND

[¶ 2] In August 2000, Levesque began working as a corrections officer for the Androscoggin County Jail. During Levesque's time at the Jail, a female coworker filed a harassment complaint against a male coworker, Kevin Harmon. The Jail conducted an internal investigation, sus-

pended Harmon, and transferred him to the night shift for what was to be a two-year assignment.

[¶ 3] Prior to the end of the two-year assignment, Levesque learned that the Jail was moving Harmon back to a daytime assignment. Levesque worked a day shift, and she voiced her opposition to Harmon's new assignment, both in a meeting with Jail administrators and in a letter to the sheriff. Ultimately, the Jail did not transfer Harmon back to the day shift, nor did it do so for the remainder of the time Levesque worked at the Jail.

[¶ 4] Following Levesque's complaint about Harmon's anticipated return to the day shift, a number of interactions took place between Levesque and her supervisors at the Jail that Levesque contends gave rise to her constructive discharge from employment. Five days after Levesque's complaint, the Jail adopted a new protocol that, according to Levesque, required her to come to work early and skip her breaks. Levesque complained, and administration officials met with her to develop a solution, which Levesque acknowledged "went a long way towards" resolving her issues. Soon thereafter, Levesque received disciplinary write-ups for three separate incidents. Finally, Levesque was assigned to new duties within the Jail, although management had never previously reassigned an officer without first placing the officer on probationary status. Following her reassignment and several smaller incidents, Levesque felt compelled to resign, and she did not return to work.

## II. LEGAL ANALYSIS

[¶ 5] We review the grant of a summary judgment de novo. *Golder v. City of Saco*, 2012 ME 76, ¶ 9, 45 A.3d 697. "A grant of summary judgment will be af-firmed if the record reflects that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law." *Id.* (quotation marks omitted). A defendant who moves for summary judgment is entitled to a judgment as a matter of law if the plaintiff fails to "establish a prima facie case for each element of her cause of action." *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 12, 48 A.3d 774 (quotation marks omitted).

[¶ 6] Levesque contends that the court erred because her statement of material facts established a prima facie case for constructive discharge as an independent cause of action, despite her failure to prevail on her claims for gender discrimination and retaliatory discrimination. We conclude that Levesque's constructive discharge claim must fail as a matter of law because neither Maine nor federal law recognizes a separate cause of action for constructive discharge independent of proof of some form of unlawful conduct giving rise to the constructive discharge.[1]

[¶ 7] The doctrine of constructive discharge originated in the context of 1930s labor law. *See Pa. State Police v. Suders*, 542 U.S. 129, 141, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004). Under then-existing law, it was illegal to discharge an employee for engaging in union activity. *See* National Labor Relations Act, Pub.L. No. 74–198, § 8(3), 49 Stat. 449, 452 (1935) (codified as amended at 29 U.S.C. § 158(a)(3) (2012)). However, employers sought to sidestep this law by "coerc[ing] employees to resign, often by creating intolerable working conditions." *Suders*, 542 U.S. at 141, 124 S.Ct. 2342. To close this loophole, the National Labor Relations Board created the doctrine of constructive discharge, which extended the definition of "dis-

---

1. Therefore, we need not and do not reach Levesque's argument that disputed issues of material fact exist with regard to her constructive discharge claim.

charge" to include coerced resignation. *Id.*

[¶ 8] In the decades that followed, courts imported the doctrine of constructive discharge to the application of federal anti-discrimination law and its state law analogs.[2] *See, e.g., id.* at 143, 124 S.Ct. 2342; *King v. Bangor Fed. Credit Union,* 611 A.2d 80, 82 (Me.1992). In Maine, a plaintiff may use the doctrine of constructive discharge to satisfy the elements of "discharge" or "adverse employment action" in an otherwise actionable claim pursuant to section 4572 of the Maine Human Rights Act. *See* 5 M.R.S. § 4572 (2011); *Hernandez–Torres v. Intercont'l Trading, Inc.,* 158 F.3d 43, 47–48 (1st Cir.1998);[3] *King,* 611 A.2d at 82. Accordingly, a constructive discharge may provide a basis for damages where unlawful discrimination is shown. *See, e.g., Bodman v. Maine,* 720 F.Supp.2d 115, 123 (D.Me.2010) ("A plaintiff who is successful in proving constructive discharge may be entitled to recover two sets of damages: damages flowing from the [discrimination] itself . . . as well as damages flowing from the loss of her job."). However, notwithstanding its application in the labor and discrimination contexts, constructive discharge does not exist as an independent cause of action under Maine statutory or common law.

[¶ 9] Furthermore, treating constructive discharge as an independent cause of action would be fundamentally inconsistent with existing employment law. We have long adhered to the doctrine of at-will employment, by which an employer may lawfully terminate an employee for any reason not prohibited by statute or private contract. *See Taliento v. Portland W. Neighborhood Planning Council,* 1997 ME 194, ¶ 9, 705 A.2d 696. Thus, far from giving effect to existing employment law, an independent cause of action for constructive discharge would be at odds with the general right of employers to discharge employees at will, provided that termination is otherwise lawful.

[¶ 10] Nor are we persuaded by Levesque's contention that constructive discharge exists as an independent cause of action under federal law. The federal courts that have directly confronted the question have concluded that constructive discharge is not an independent cause of action. *See, e.g., Hogwood v. Town of Oakland,* No. 11–2396–STA–dkv, 2012 WL 1414000, at *3, 2012 U.S. Dist. LEXIS 56159, at *9 (W.D.Tenn. Apr. 23, 2012); *Schmidt v. Medicalodges, Inc.,* 492 F.Supp.2d 1302, 1305 (D.Kan.2007); *Tardif–Brann v. Kennebec Valley Cmty. Action Program,* No. 04–132–B–S, 2005 WL 1712421, at *12, 2005 U.S. Dist. LEXIS 14750, at *44 (D.Me. July 21, 2005); *Kroll v. Disney Store, Inc.,* 899 F.Supp. 344, 347 (E.D.Mich.1995).

[¶ 11] Contrary to Levesque's assertion, the First Circuit Court of Appeals did not recognize an independent cause of action for constructive discharge in *Marrero v. Goya of P.R., Inc.,* 304 F.3d 7 (1st Cir.2002). There, an employee alleging sexual harassment brought federal law claims for hostile work environment, retaliation, and constructive discharge. *Id.* at 13. The court concluded that although the employee's retaliation claim was not actionable, her claim for constructive discharge did not "stand or fall with her

---

**2.** Both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) (2012), and the Maine Human Rights Act, 5 M.R.S. § 4572(1)(A) (2011), prohibit the unlawfully discriminatory discharge of an employee.

**3.** "Federal precedent on Title VII provides useful guidance for our interpretation of the Maine Human Rights Act...." *Kopenga v. Davric Me. Corp.,* 1999 ME 65, ¶ 20, 727 A.2d 906.

retaliation claim." *Id.* at 27–28. This does not lead to the conclusion, however, that constructive discharge is an independent cause of action. In *Marrero,* the employee claimed that she was forced to retire because of "two separate stressors"—sexual harassment and retaliation—and the court concluded that her claim for harassment was actionable. *Id.* at 20, 27–28. Because the employee could still point to the harassment as unlawful conduct that gave rise to her alleged constructive discharge, her claim for damages resulting from her constructive discharge remained actionable.

[¶ 12] In this case, Levesque has not challenged the summary judgment denying her claim for gender discrimination or the judgment entered on the jury's verdict denying her claim for retaliatory discrimination. Nor has she alleged that the actions giving rise to her alleged constructive discharge from employment were themselves a form of unlawful discrimination under the Maine Human Rights Act. As such, Levesque's claim for constructive discharge fails.

The entry is:

Judgment affirmed.