STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-17-16
DOCKET NO. AP-17-17

EDWARD LARRABEE,

Plaintiff

v.                                                              ORDER

DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

Defendant

---

PORTLAND CENTER FOR ASSISTED
LIVING,

Plaintiff,

DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

Defendant

REC'D CUMB CLERKS OFC
FEB 1 '18 PM 2:32

Before the court are consolidated appeals in the above-captioned cases. The court has reviewed the briefs filed by the parties and has considered the points made by counsel in response to the court's questions on January 30, 2018.

Procedural History

In 2015 Edward Larrabee was admitted as a resident at the Portland Center for Assisted Living (PCAL), a Level IV residential care facility, based on his inability to live on his own and insulin-dependent diabetes.

On January 13, 2016 PCAL issued Larrabee a notice of discharge due to non-payment. The record reflects that Larrabee had agreed to pay PCAL for his care in an amount determined by MaineCare, and that DHHS had determined that Larrabee was required to pay $1003.00 per month. PCAL-1.[1] The notice of discharge indicated that he would be discharged to either his wife's residence or to the residence of his step-sister. At that time he had recently been assessed with the conclusion that he was eligible for a nursing facility level of care.

Larrabee filed an appeal from the notice of discharge with the Department of Health and Human Services (DHHS) pursuant to § 5.28 of CMR 10-144, Chapter 113, Regulations Applicable to Level IV Residential Care Facilities.[2] In light of his appeal, his discharge did not proceed.

Hearing Officer Tamra Longanecker issued a decision on December 9, 2016 finding that there was no dispute that Larrabee had failed to pay the cost of care since he arrived at the facility but that PCAL had not provided him with a "safe and orderly discharge plan" as required by § 5.4 of the Level IV Facility Regulations. Hearing Officer Longanecker concluded that the residences proposed by PCAL were not appropriate and, because PCAL had

> failed to provide a safe discharge plan, it cannot discharge him at this time . . . . The facility always has the ability to re-issue a notice of discharge and produce a safe discharge plan which accounts for his higher level of need.

Larrabee-4 at p.4.

On January 17, 2017 PCAL involuntarily discharged Larrabee to a Motel 6 in Portland. Although § 5.4 of the Level IV Facility Regulations required that 15 days advance notice be

---

[1] The administrative record has tabs for the exhibits offered at the hearing (e.g., HO-1, PCAL-1, Larrabee-1), and the references in this order correspond with those tabs.

[2] CMR 10-144, Chapter 113, Regulations Applicable to Level IV Residential Care Facilities, shall subsequently be referred to as the Level IV Facility Regulations.

2

given of any non-emergency discharge, Larrabee was not given a new notice of discharge. He was given a discharge plan (PCAL-4), which advised him, inter alia, that his stay at Motel 6 had been pre-paid through January 31, that his personal items including medication had been packed and would be transported to Motel 6, and that he would receive visiting nurse services several days a week beginning on January 19.

On January 30, 2017 Larrabee was admitted to Maine Medical Center with dizziness and weakness and hyperglycemia in the 400 range. Larrabee-1 at 9-10. The medical record indicated that at the hospital his blood sugar was reduced to the 200 range but he "was felt unsafe to be discharged back to Motel 6 given his inability to safely administer his meds and SQ [subcutaneous] insulin." Larrabee-1 at 10.

Counsel for Larrabee filed an appeal from PCAL's January 17, 2017 discharge and sought a hearing before an administrative hearing officer at DHHS. HO- 4. A hearing was held on February 24, 2017 before Hearing Officer Miranda Benedict.[3] At the time of the hearing, Larrabee remained at Maine Medical Center. Hearing Tr. (Tab C) at 115.

Evidence at the February 24, 2017 Hearing

At the hearing there was testimony from the administrator of PCAL, from a social worker at Maine Med in charge of discharge planning, from two DHHS employees of the division of Licensing and Regulatory Services (one who had investigated Larrabee's complaint, and her supervisor), and from Larrabee.

The PCAL administrator testified that although no new notice had been given, PCAL was relying on the prior notice. She also testified that PCAL believed that the new discharge plan was

---

[3] The Hearing Transcript (Tab C of Administrative Record) indicates that the hearing was held on March 22. However, the Hearing Officer's decision (Tab A of Administrative Record) indicates that the hearing was expedited and was held on February 24.

3

safe because Larrabee had left PCAL to visit his wife on eight weekends prior to his discharge, and PCAL therefore understood that Larrabee was able to manage to take his insulin when he was away from PCAL. PCAL also knew that Larrabee had a vehicle and drove himself to appointments. The PCAL administrator testified that PCAL had reached out to approximately 80 other providers, nursing homes, and assisted living facilities but all had declined to accept Larrabee.

The Maine Medical social worker in charge of discharge planning testified that she understood from discussions with the visiting nurse service that they had not made contact with Larrabee for about 5 days after he was discharged from PCAL. She testified that Larrabee had apparently been able to use an insulin pen once he had been trained on that at the hospital. However, she thought that it would not be safe to discharge Larrabee to a facility that was not a nursing care facility because of his diabetes because he needed insulin several times a day and needed nursing care to make sure he was able to take the proper dosage given the shakiness of his hands, and to watch for hypoglycemic symptoms. At the time of the hearing, Maine Med had put out a number of referrals attempting to find a long-term care nursing home bed for Larrabee.

The two DHHS employees testified that there had been a DHHS investigation once DHHS received a complaint from Larrabee, and DHHS had considered that PCAL had violated the notice provision but had provided a safe discharge plan.[4] The DHHS employees had not interviewed Larrabee. Like the PCAL administrator, they relied on the assumption that Larrabee had been able to administer insulin on his weekend visits with his wife. They also had not interviewed anyone to determine how Larrabee had administered insulin while away from the

[4] DHS Supervisor Suzanne Kairns stated that a discharge to a motel was a safer plan than a discharge to the street or to a homeless shelter. Hearing Tr. 79. This is correct but does not resolve whether a discharge to a motel from a Level IV Residential Care Facility qualifies as a safe plan. Hearing Officer Benedict did not, however, base her finding that the discharge was unsafe on the fact that it was made to a motel.

4

facility. DHHS worker Bobbi McKeaney acknowledged that if Larrabee had not been able to self-administer insulin at the time he was discharged, the discharge would not have been safe.

Larrabee testified that he only received visiting nurse services twice between January 17 and January 30 and never received an insulin pen but only an inadequate number of syringes. He testified that he had been rushed out of PCAL on January 17 and had not been adequately trained on how to use the syringes. He needed to self-administer what is known as sliding scale insulin several times a day[5] and had difficulty doing that at Motel 6, in part because he had difficulty remembering how the sliding scale worked and in part because his tremor is worse whenever his blood sugar levels are off. When he had visited his wife before his discharge, she had administered insulin via syringe.

The record also contains evidence that after the January 17 discharge Larrabee had been reassessed on February 8, 2017 and found to still be medically eligible for nursing facility level of care. Larrabee-2. According to Larrabee-2 and the evidence at the hearing, such assessments are good for 30 days.[6] Larrabee-2 specifies that based on the assessment, Larrabee would be entitled to have MaineCare pay for 30 days of nursing home care and would then have to be reassessed.

---

[5] Sliding scale insulin means that a blood sugar reading is taken and the insulin dose is adjusted based on the level of blood sugar. Hearing Tr. 70-71.

[6] The court assumes that this contemplates that persons discharged from a hospital may need nursing facility level of care for an additional recuperation period. However, Larrabee is not recuperating and there is no evidence that his condition fluctuated over time.

5

## Hearing Officer's Decision

Hearing Officer Benedict's decision, issued on March 31, 2017 (Tab A), found that PCAL had not given Larrabee the 15-day notice required under the regulations and thus had denied Larrabee his right to appeal his discharge before it happened. The decision also found that Larrabee remained eligible for nursing home level of care at the time he was discharged and that his discharge by PCAL was neither safe not appropriate. However, the decision also concluded that, despite the above failures, the Hearing Officer did not have the authority to compel PCAL to readmit Larrabee.

On May 1, 2017 Larrabee appealed from Hearing Officer's decision that she lacked authority to compel PCAL to readmit Larrabee. AP-17-16. On May 5, 2017 PCAL appealed the Hearing Officer's decision that it had failed to provide a safe and appropriate discharge plan. AP-17-17.[7] The two appeals were consolidated on June 13, 2017. Both Larrabee and PCAL have filed briefs in support of their own appeals and in opposition to each other's appeals. DHHS also filed a brief arguing that the Hearing Officer's decision should be upheld in all respects.

## Rule 80C Review

Under Rule 80C and the Administrative Procedure Act, the court reviews the decision of a state agency to determine if its findings or conclusions are (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by bias or error of law; (5) unsupported by substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by an abuse of discretion. 5 M.R.S. § 11007(4)(C).

---

[7] PCAL's original petition for review also sought review of the decision that it had not provided proper notice. In its brief, however, PCAL stated that it was not pursuing that issue and was only seeking to overturn the decision that it had failed to provide a safe and appropriate discharge. PCAL Brief at 2 n.2.

An agency's factual findings will be sustained if those findings are supported by competent evidence in the record even if the record also includes contrary evidence and even if the court would not necessarily have reached the same result. *Seider v. Board of Examiners of Psychologists,* 2000 ME 206 ¶¶ 8-9, 762 A.2d 551.

Issues of law are reviewed de novo. *Munjoy Sporting & Athletic Club v. Dow,* 2000 ME 141 ¶ 7, 755 A.2d 531. Courts will generally defer to an agency on matters within the agency's expertise "unless a statute or regulation compels a contrary result." *Green v. Commissioner,* 2001 ME 86 ¶ 9, 776 A.2d 612.

Safe and Appropriate Discharge

The short answer to PCAL's appeal is that there is substantial evidence to support the Hearing Officer's decision that PCAL did not provide a safe and adequate discharge plan. The only issue that warrants discussion is PCAL's argument that the Hearing Officer was not entitled to consider evidence of what happened after January 17 in determining whether the plan was adequate.

First, there is no dispute that this was not an emergency situation, and in non-emergency situations section 5.4 of the regulations required that PCAL give 15 days advance notice of its intent to discharge and of the resident's right to appeal. This is also consistent with Hearing Officer Longanecker's December 2016 decision, which expressly stated that PCAL retained "the ability to *re-issue* a notice of discharge and produce a safe discharge plan" (emphasis added). With 15 days advance notice Larrabee could have appealed and there would have been an opportunity in advance to explore the problems with Larrabee's self-administration of insulin by syringe and with PCAL's assumption that his weekend visits demonstrated that he was fully

7

capable of self-administering sliding scale insulin and to explore whether Larrabee needed nursing facility level of care, as noted in hearing Officer Longanecker's decision and as confirmed in the February 8, 2017 evaluation.

Having denied Larrabee that opportunity, PCAL cannot now be heard to argue that Hearing Officer Benedict should not have considered any events subsequent to January 17.

Moreover, there is sufficient evidence in the record from which it can be concluded that the problems actually experienced after discharge could have been anticipated. As Hearing Officer Benedict noted, there is no evidence that Larrabee's need for nursing level of care had diminished since the evaluation referred to in Hearing Officer Longanecker's December 2016 decision. Significantly, there is absolutely no mention in the January 17, 2017 discharge plan as to how insulin would be provided or administered – a crucial issue for Larrabee. Nothing in the discharge plan even reflects PCAL's assumption that Larrabee was capable of self-administration. The only passing reference to medication is the statement that "all personal items (including medications) have been packed." PCAL-4.

Authority to Order Readmission

The more difficult issue is whether Hearing Officer Benedict had the authority to order readmission. Larrabee argues that the applicable DHHS regulations must be construed to authorize the Hearing Officer to order Larrabee's readmission under the circumstances of this case. Specifically, he argues that agencies are bound by their own regulations and that, if courts have the power and duty to interpret statutes so as to avoid inconsistent or absurd results, *Doe v. Regional School Unit 26,* 2014 ME 11 ¶¶ 14-15, 86 A.3d 600, regulations should be similarly construed. The court agrees.

8

The pertinent provisions of the Level IV Facility Regulations are as follows:

**5.4 Transfer or discharge.** When a resident is transferred or discharged in a non-emergency situation, the resident or his/her guardian shall be provided with *at least fifteen (15) days advance written notice* to ensure adequate time to find an alternative placement that is safe and appropriate. The provider has an affirmative responsibility to assist in the transfer or discharge process and to produce a safe and orderly discharge plan. *If no discharge plan is possible, then no involuntary non-emergency discharge shall occur until a safe discharge plan is in place. . . . Each notice must be written and include the following:*

. . . .

*5.4.3. Notice of the resident's right to appeal the transfer or discharge as set forth in Section 5.28 . . . .*

. . . .

**5.28 Right to appeal an involuntary transfer or discharge.** The resident has the right to an expedited administrative hearing to appeal an involuntary transfer or discharge . . . . *If the resident has already been discharged in an emergency basis, the provider shall; hold a space available for the resident pending receipt of an administrative decision . . . .*

(Emphasis added).

It follows from the above regulations that (1) no involuntary non-emergency discharge can occur without 15 days advance notice in which a resident has a right to an expedited appeal and (2) no discharge can occur if an appeal determines that there is no safe discharge plan. It therefore makes no sense to conclude that – if the facility violates the regulations by bundling a resident out the door with no advance notice and without a safe discharge plan – there is no authority to require the facility to readmit the resident.

This is particularly true because when emergency discharges occur, the regulations expressly require the facility to hold space open in the event that the discharge is not upheld on appeal. If space must be held open to allow readmission in the case of emergency discharges (because there is no opportunity to appeal in advance in such cases), it follows that the

9

regulations must be interpreted to require that – when the facility violates a resident's right to bring an expedited appeal before being discharged – space must be held open to allow readmission as well. In fact, holding a space open in this case would not have been necessary because the record reflects that PCAL had 21 available beds after it precipitously discharged Larrabee.

Finally, Hearing Officer Longanecker had ordered that PCAL "cannot discharge [Larrabee] at this time" but retained the ability "to re-issue a notice of discharge and produce a safe discharge plan which accounts for his higher level of need." Larrabee-4. PCAL did not appeal from that order. Nevertheless, PCAL proceeded to discharge Larrabee without re-issuing a notice of discharge and without producing a safe discharge plan. The applicable DHHS regulations must be interpreted to allow Hearing Officers to enforce their orders.

The court understands that the situation in this case may not be entirely black and white. There is a suggestion in the record that Larrabee may at times be a difficult patient (Hearing Tr. 53), and no justification appears in this record for Larrabee's failure to pay PCAL for the care he has received. PCAL thus is faced with a resident responsible for paying $1003 monthly who has not paid for his care. If PCAL's testimony as to its unsuccessful efforts to find a nursing home or other facility to accept Larrabee is credited, PCAL is in a challenging situation. Nevertheless, PCAL is not entitled to violate DHHS regulations by discharging Larrabee without the required advance notice, without affording the required pre-discharge right of appeal, and without a safe discharge plan and then argue that it cannot be required to readmit Larrabee because his procedurally invalid and unsafe discharge is a *fait accompli*.

10

Relief

At the hearing on January 30, counsel for Larrabee clarified that the relief sought by Larrabee was an order that the Hearing Officer had authority to order Larrabee's readmission to PCAL and that such readmission should have been ordered. For the reasons set forth above, the court agrees that the Hearing Officer had the requisite authority to order readmission. However, it concludes that the appropriate remedy is to remand for the Hearing Officer to consider whether in fact to order readmission.

This is true for several reasons. First, the administrative hearing in this case was held on February 24, 2017 and the Hearing Officer's decision was issued on March 31. The appeal was not fully briefed until September – more than six months after the hearing. By that time the relevant circumstances are likely to have changed.[8] For reasons that are not the fault of the parties and in part because of the court's schedule, it has also taken a considerable time for the court to rule on this appeal.

In addition, the Hearing Officer's decision that the January 17, 2017 discharge was not safe was based to some extent on the assessment that Larrabee needed nursing level of care. However, the record reflects, and there is no dispute, that PCAL is not a nursing level facility. This issue would need to be considered in connection with any decision on whether to order readmission

The court understands and agrees with Larrabee's position that PCAL should not have discharged Larrabee without adequate notice and a safe discharge plan and that, if PCAL had complied with the regulations, Larrabee would not have left PCAL on January 17. In an

---

[8] In an emergency situation, section 5.27 of DHHS regulations preserves the rights of Level IV patients to seek injunctive relief from the Superior Court. In this case, once Larrabee was in Maine Med, the court understands that this was not deemed to constitute a case where readmission was required to prevent irreparable harm.

appropriate case, this could justify an order by the Hearing Officer to readmit Larrabee. However, that decision should be made by the Hearing Officer depending on consideration of all the relevant circumstances at the time readmission is considered and should not be made by the court based on an administrative record containing information that is almost certainly out of date.[9]

The entry shall be:

1. On Larrabee's appeal (AP-17-16), the court overturns the Hearing Officer's decision that the Hearing Officer did not have authority to require PCAL to readmit Larrabee and remands the case to the Hearing Officer to determine what further relief should be given.

2. On PCAL's appeal (AP-17-17), the court upholds the decisions of the Hearing Officer (1) that PCAL did not provide the required advance notice and thereby deprived Larrabee of his right to a pre-discharge hearing and (2) that PCAL did not provide a safe discharge plan.

3. The clerk shall incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: February __/__, 2018

_____
Thomas D. Warren
Justice, Superior Court

---

[9] Although not in the record, the court learned at the January 30 hearing that Larrabee is no longer at Maine Med but was admitted to a different facility subsequent to the hearing on his appeal. The parties have not argued that the issues here are moot. If they had, the court would conclude that the exceptions to mootness for issues of public interest and issues that are capable of repetition but evading review would apply in this case.