STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-18-48

BROWNIE CARSON, SARAH DECATO,
and DONNA ELLIS,

Petitioners

v.

COMMISSIONER OF THE DEPARTMENT
OF HEALTH AND HUMAN SERVICES,

Respondent

**ORDER ON RESPONDENT'S
MOTION TO DISMISS and ON
PETITIONERS' 80C APPEAL**

Before the Court is Petitioners Brownie Carson, Sarah Decato and Donna Ellis's 80C petition for review of the Commissioner of the Department of Health and Human Services's ("DHHS's" or "the Department's") failure to act. Additionally, DHHS has filed a motion to dismiss the 80C petition. The parties have briefed both the merits of the petition as well as the motion to dismiss. Petitioners are represented by Attorney Timothy Shannon and the Department is represented by Assistant Attorney General Deanna White.

## Background

Pursuant to Maine Law, the Department is required to establish and staff a Public Health Nursing Program. 22 M.R.S. §§ 1961, 1964. The staffing requirements are as follows:

> Notwithstanding any other provision of law, and without further approval or justification, the department shall promptly fill all public health nurse positions within the Public Health Nursing Program for which funding is provided.

> The department shall widely post public notices for public health nurse vacancies under this section on publicly accessible state websites and in other appropriate locations. Public notice must be posted within 30 days of the effective date of this section for vacancies then existing and within 30 days of each subsequent vacancy

1

that occurs. The department shall recruit and hire qualified individuals for these vacant positions.

Notwithstanding any other provision of law, the department may not transfer or otherwise repurpose any funds appropriated or allocated for the salaries, benefits and other costs of public health nurses and the services they provide.

22 M.R.S.A. § 1964 (enacted by P.L. 2017, c. 312). In addition to these provisions, an uncodified portion of section 1964's enacting legislation states: "The staffing for the Public Health Nursing Program . . . required by Title 22, section 1964, must be achieved as soon as possible after enactment of this Act, but no later than March 1, 2018." P.L. 2017, c. 312, pt. B. (effective November 1, 2017) (hereafter "Chapter 312").

Petitioners filed the instant petition because they claim that the Department has refused to act as required by law by failing to adequately post notices of vacant nursing positions and by failing to fill all vacant nurse positions for which funding is available.[1]

## I. The Department's Motion to Dismiss

The Department argues that the Petition should be dismissed for three reasons: (1) the petition is moot; (2) the Petitioners lack standing; and (3) the separation of powers doctrine. The Department also argues that Count II should be dismissed because it only alleges a request for a remedy and that remedy is not available in this case.

### 1. Mootness

The Department argues that the petition is now moot because the March 1, 2018 deadline for filling all vacancies has passed and because the Department is continuing to fulfill the essential goals of the PHN statute.

---

[1] Count III of the Petition also included a claim for a FOAA violation. This count was dismissed by agreement of the parties on September 17, 2018.

Essentially, the Department is arguing that the petition is moot because it is substantially complying with the statute. However, whether the department has substantially complied with the PHN laws and whether a substantial compliance standard is the appropriate standard of review are the same issues which must be decided on the merits of the appeal itself. Consequently, the petition is not moot.

## 2. Standing

Petitioner Brownie Carson is a Senator in the Maine Legislature who authored amendments to the statutes governing the PHN program. *See* P.L. 2017, c. 312. Petitioners Sarah DeCato and Donna Ellis are nurses by training who have worked in various public health capacities for twenty and thirty years respectively. Both DeCato and Ellis claim to have applied for vacant PHN positions. Neither DeCato or Ellis have been hired for any vacant PHN positions.

In order to have standing to pursue 80C review of an agency's failure or refusal to act, a person must be aggrieved by the failure or refusal to act. 5 M.R.S. § 11001(2). A person is aggrieved if they have suffered a particularized injury. *Nelson v. Bayroot, LLC*, 2008 ME 91, ¶ 10, 953 A.2d 378. A particularized injury is something which operates "prejudicially and directly upon the party's property, pecuniary or personal rights" and which is distinct from any injury suffered by the public at large. *Id.* A particularized injury "must be more than an abstract injury." *Id.*

The Department argues that none of the three petitioners have shown that they have suffered any injury that is distinct from the interest of the general public. Specifically, the Department argues that none of the petitioners allege that they are served by the PHN program; that there is no right to obtain state employment, and therefore Petitioners DeCato and Ellis have not suffered any injury by the Department's failure to hire them; and that Petitioner Carson's interest in having the laws executed properly is abstract and indistinguishable from the public at

3

large. The Department also argues that the Petitioners may not obtain any personal redress because the statutes governing the PHN program do not provide a private right of action.

In response, Petitioner Carson argues that he has standing as a legislator without other recourse. *See Va. House of Delegates v. Bethune-Hill,* ___US___, 2019 U.S. LEXIS 4174, at \*15 (June 17, 2019) (stating that "legislators whose votes would have been sufficient to defeat (or enact) a specific legislative act have standing to sue if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified") (quoting *Raines v. Byrd,* 521 U.S. 811, 823 (1997)). Petitioners DeCato and Ellis argue that they have standing due to the prospect of suffering economic injury from not being hired. *See Halfway House, Inc. v. City of Portland,* 670 A.2d 1377, 1380 (Me. 1996) ("economic injury (or its prospect) from government action is sufficient to confer standing.")

This court is unaware of any Maine Case which has held that a state Legislator has standing to seek enforcement of enacted legislation. *See Senate v. Sec'y of State,* 2018 ME 52, ¶ 25, 183 A.3d 749 (Assuming without deciding that the Maine Senate has standing to seek a declaration that the Secretary of State does not have constitutional authority to implement ranked choice voting in the absence of a specific appropriation). This court need not resolve this question, however, because the Court finds that both Petitioners DeCato and Ellis have standing to challenge the Department's implementation of the PHN program. At oral argument, the Department conceded that both DeCato's and Ellis's experience and training makes them qualified to serve as public health nurses. Because they were qualified for vacant PHN positions but did not get hired, DeCato and Ellis have suffered a particularized injury sufficient to confer standing to challenge the Department's implementation of the program. *See Nelson,* 2008 ME 91, ¶ 10, 953 A.2d 378.

### 3. Separation of Powers

The Department argues that the separation of powers doctrine precludes either the Judicial Branch or the Legislature from "dictating how and when [the Department] staffs the Public Health Nursing Program." The Department makes two arguments in support of this contention. First, the Department argues that Separation of Powers precludes the court from dictating how and when the Department hires nurses. Second, The Department argues that hiring decisions fall within the Departments administrative discretion and are therefore not susceptible to judicial review.

Neither of the Department's arguments are persuasive. The claim raised by the Petitioners is that provisions of law require the Department to hire a specific number of nurses by a specific date and that the Department has failed to do so. As such, the court would not be unlawfully usurping the executive power by interfering with the Department's discretionary hiring decisions. *See New England Outdoor Center v. Comm'r of Inland Fisheries & Wildlife*, 2000 ME 66, ¶¶ 11-12, 748 A.2d 1009. Instead, the Court would be determining if the Department had any discretion at all. If the Court found that the Department had certain mandatory legal obligations that it was not fulfilling, then any judicial remedy would be first limited to ordering the Department to comply with the law and then potentially holding the appropriate individuals in contempt for any further failure to follow the law. *See Bates v. Dept. of Behavioral and Developmental Services*, 2004 ME 154, ¶ 86, 863 A.2d 890. Consequently, proceeding to the merits of the petition would not violate the Separation of Powers Doctrine.

### 4. Special Auditor

The Department also argues that the Court should dismiss Count II of the petition—which requests that the Court appoint a special auditor with the power to inspect records, request information, and conduct in person interviews. The Department bases its argument on its assertion

that relief under Rule 80C is only available to the extent that a writ of mandamus was available and common law. The Department argues that a special auditor with the powers contemplated by the Petitioners was not available pursuant to the writ of mandamus and that neither is such an auditor provided for in the rules of Civil Procedure.

Despite the Department's arguments, the Law Court has indicated that a trial court may, albeit under exceptional circumstances, appoint a court master to assist the court with determining whether an administrative agency is substantially complying with a court order. *See Bates*, 2004 ME 154, ¶ 86, 863 A.2d 890. Consequently, dismissal of Count II is not warranted.

### Conclusion

For the foregoing reasons, the Department's motion to dismiss is denied.

### II. The Merits

The parties do not dispute the fact that the Department has failed to fully staff all vacant PHN positions. Instead the parties dispute what level of compliance the PHN statutes require and whether the Department has so complied. Specifically, the Petitioners claim that the Department must strictly comply with the law which governs PHN staffing levels, 22 M.R.S. § 1964, and that the Department cannot meet its legal obligations through substantial compliance. The Petitioner's argue that the use of the term "shall" indicates that the Department's legal obligations are mandatory and not merely directive as the Department claims. Consequently, the Petitioners argue that the Department is not in compliance with section 1964 because it has not filled all vacant nurse positions.

On the other hand, the Department argues that section 1964 only requires substantial compliance. The Department contends that it has substantially complied with the law by launching

6

recruiting and hiring campaigns; posting notice of vacancies on the Department's website and online job search sites; purchasing radio advertisements; and by hiring nurses to fill many—but not all—of the vacant PHN positions.

The Law Court has held on a number of occasions that statutory provisions which appear to impose a mandatory duty upon an executive agency are only "directory." *Anderson v. Commissioner of Dep't of Human Services*, 489 A.2d 1094, 1098 (Me. 1985); *see also Givertz v. Maine Medical Center*, 459 A.2d 548, 554 (Me. 1983). This occurs where the seemingly mandatory requirement is "not of the essence of the thing to be done" and where the failure to obey the requirement will not prejudice "those whose rights are protected by [the] statute." *Anderson*, 489 A.2d at 1098. In such a case, the agency is not compelled to act in strict accordance with the mandatory language of the statute but must instead substantially comply with the statute as a whole. *Id*. at 1098-99. In determining whether statutory language creates a mandatory duty or if the language is instead directory, a court must look to the legislative intent behind the statute's enactment. *Id*. at 1097-98.[2]

The first step in determining legislative intent is to interpret the plain language of the statute at issue. *Wawenock, LLC v. Dep't of Transportation*, 2018 ME 83, ¶ 7, 187 A.3d 609. Only if the statutory language is ambiguous will a court look to other indicia of legislative intent such as the statutes legislative history. *Id*. In interpreting the plain language, a court is not confined to the "bald literalness of statutory phrasing." *Town of Embden v. Madison Water Dist.*, 1998 ME 154, ¶ 7, 713 A.2d 328. Instead, the court may also take into account "the subject matter and purposes of

[2] In *McGee v. Sec'y of State*, the Law Court held that its prior decisions applying the mandatory-directory distinction had been superseded for the purposes of interpreting 21 M.R.S. 903-A. 2006 ME 50, ¶ 14, 896 A.2d 933. This holding was based on 1 M.R.S. § 71(9-A) which provides a general rule of construction to be followed when interpreting the terms "shall" and "must" in Maine statutes. For reasons which will be discussed, this rule of construction is not applicable to the provisions of law which are at issue in this case.

7

the statute, and the consequences of a particular interpretation." *Merrill v. Me. Pub. Emps. Ret. Sys.*, 2014 ME 100, ¶ 15, 98 A.3d 211. Consequently, a court may "ignore the literal meaning of phrases if that meaning thwarts the clear legislative objective." *Doe v. Reg'l Sch. Unit 26*, 2014 ME 11, ¶ 15, 86 A.3d 600. Similarly, a court may reject any statutory construction that is "inimical to the public interest' or creates absurd, illogical, unreasonable, inconsistent, or anomalous results if an alternative interpretation avoids such results." *Id.*

In this case, the Petitioner's plain language[1] argument relies entirely on Chapter 312's use of the terms "shall" and "must." The Petitioners argue that pursuant to the rules of construction as set by statute, the terms "shall" and "must" indicate a mandatory duty that the Department is required to adhere to. *See* 1 M.R.S. § 71(9-A) ("'shall' and 'must' are terms of equal weight that indicate a mandatory duty, action or requirement"). In light of this rule of construction, Petitioners argue that the timelines contained in Chapter 312 are mandatory and the Department must therefore strictly comply with Chapter 312 by posting notices within 30 days of vacancies and by promptly filling all vacant PHN positions no later than March 1, 2018. Because vacancies continue to remain and because the Department has not continually maintained notices of vacant positions, Petitioners assert that the Department has not strictly complied with Chapter 312.

Petitioner's argument, however, ignores the fact that the court need not adhere to the statutory rule of construction if doing so would be inconsistent with the plain meaning of Chapter 312. *See* 1 M.R.S. § 71 ("The following rules shall be observed in the construction of statutes, *unless such construction is inconsistent with the plain meaning of the enactment*") (emphasis added); *McGee*, 2006 ME 50, ¶ 16, 896 A.2d 933 ("The rules of construction provided by sections

---

[1] The Petitioners also argue that legislative history supports a conclusion that the PHN staffing requirements must be strictly complied with. As discussed above, legislative history will only be considered if statutory language is ambiguous. *Wawenock*, 2018 ME 83, ¶ 7, 187 A.3d 609.

71(9-A) and 7 are dispositive here *in the absence of statutory language plainly supporting a contrary interpretation*") (emphasis added); *see also Doe*, 2014 ME 11, ¶ 15, 86 A.3d 600.

Here, the requirement that the Department "shall promptly fill all public health nurse positions" appears to indicate that the Department is required to fill all vacant positions as soon as possible and that the Department has no discretion or authority to refuse to promptly fill these positions. *See McGee*, 2006 ME 50, ¶ 16, 896 A.2d 933. Elsewhere, however, section 1964 also mandates that "the department shall recruit and hire *qualified individuals* for these vacant positions." 22 M.R.S. § 1964. This language appears to indicate that the Department is required to hire only qualified PHN candidates and has no discretion or authority to hire unqualified candidates.

If not enough qualified individuals apply for the available PHN positions the Department would be forced to choose between either hiring only qualified individuals—and thereby failing to fill all vacancies—or filling all vacancies—and thereby hiring unqualified individuals. Such a situation would necessarily mean that it would be impossible for the Department to strictly comply with the entirety of Section 1964. The Department has little to no control over either the number of applicants for nursing positions or the quality of the applicants for those positions. Similarly, the Department cannot prevent nurses who are currently employed from leaving their employment for more lucrative positions elsewhere. Accepting the petitioners' interpretation of the law would allow the court to hold the Department in contempt anytime a PHN nurse left employment or too few qualified applicants applied for an available nursing position.

In light of this, the court believes that the language directing the Department to promptly fill vacant positions is directory rather than mandatory. This conclusion is also based on the fact that the purpose of the PHN program is to provide certain health services to communities which

9

lack these services or which receive inadequate services. *See* 22 M.R.S. § 1963(3). If the PHN program were staffed with unqualified individuals, this purpose would not be met. Therefore, Section 1964 can only be interpreted as requiring the Department to promptly fill all PHN positions with qualified individuals and the promptness language should be considered directory. *See Anderson v. Commissioner of Dep't of Human Services*, 489 A.2d 1094, 1099 (Me. 1985) ("statutory provision requiring an act to be done within a certain time are directory and not mandatory or jurisdictional unless the statute manifests a clear intent to the contrary").

The Record indicates that, beginning in the Fall of 2018, the Department has posted public notices of available PHN jobs and hired additional nurses. (Downing Aff. ¶¶ 6-7; Downing Supp. Aff. ¶¶ 3-6.) As of May 7, 2019, the Department employs 37 nurses in the PHN program and there remain 13 vacancies in the program. (Downing Supp. Aff. ¶ 6.) This is in contrast to the 25 vacancies which existed in January 2017, the 26 vacancies which existed in June 2018, and the 23 vacancies which existed in March 2018. (Carson Aff. Ex. K.) The Department continues to schedule and conduct interviews of applicants for PHN positions. (Downing Aff. ¶ 5.) The record shows that this is not a case where the Department has taken no action at all toward meeting its legislative obligations, as it did with Medicaid expansion. *See Me. Equal Justice Partners v. Hamilton*, No. BCD-AP-18-02, 2018 Me. Bus. & Consumer LEXIS 27, at *17 (June 4, 2018). Even if it had not previously made appropriate efforts to hire nurses, the Department has now taken substantial steps toward filling all PHN vacancies and is thus substantially complying with section 1964 and Chapter 312. Consequently, the Petitioners' appeal is denied.

## Conclusion

The entry is

> Respondent Commissioner of the Department of Health and Human Services' Motion to Dismiss is DENIED.

10

Petitioners Brownie Carson, Sarah Decato, and Donna Ellis's 80C Petition is Denied.


Date: ____6/27/19____

_____
Justice, Superior Court

11