William DODDS, Superintendent; Highland Local School District; Shawn Winkelfoos, Principal; Board of Education of the Highland Local School District, Third Party Defendants–Appellants,

v.

UNITED STATES DEPARTMENT OF EDUCATION; John King, Secretary of Education; Loretta E. Lynch, Attorney General; United States Department of Justice; Vanita Gupta, Principal Deputy Assistant Attorney General, Defendants,

Jane Doe, a minor by and through her legal guardians Joyce and John Doe, Intervenor–Third Party Plaintiff–Appellee.

No. 16–4117

United States Court of Appeals, Sixth Circuit.

Decided and Filed: December 15, 2016

Before: KEITH, SUTTON, and DONALD, Circuit Judges.

The court delivered a PER CURIAM order. SUTTON, J. (pp. 222–24), delivered a separate dissenting opinion.

## ORDER

Plaintiffs Highland Local School District Board of Education, Highland Local School District, its superintendent, and its principal ("Highland") appeal a preliminary injunction ordering the school district to treat an eleven-year old transgender girl as a female and permit her to use the girls' restroom. Highland moves to stay the injunction pending appeal and to file an appendix under seal which contains documents filed under seal in the district court. Third–Party Plaintiff Jane Doe, a minor and special needs student, by and through her legal guardians, opposes a stay. Defendants, various government entities and individuals, have not responded to the motion to stay. Highland filed a reply. Doe moves for leave to file a sur-reply, and Highland opposes the motion.

■ First, we address the procedural motions. Highland moves to file a declaration of Attorney Steven O'Ban in support of its motion to stay under seal because it contains exhibits that were filed under seal in the district court. Highland is correct that "[d]ocuments sealed in the lower court . . . must continue to be filed under seal in this court." 6th Cir. R. 25(h)(5). But O'Ban's declaration does not contain any confidential information, and only four of the exhibits attached to his declaration were filed under seal in the district court and are electronically inaccessible. Therefore, only those four exhibits need to be filed under seal. Thus, we need only grant the motion in part.

■ Doe moves for leave to file a sur-reply so that she may respond to an argument raised for the first time in Highland's reply to the motion for stay. Although Highland does not specifically argue that the district court abused its discretion in failing to conduct an evidentiary hearing, it does allege that we need not give deference to the district court's factual findings because it did not conduct an evidentiary hearing. Doe, in her sur-reply, notes that Highland concurred with her that no evidentiary hearing was necessary. Because Doe's sur-reply is relevant, we will grant the motion to file a sur-reply.

■ Next, we address the motion to stay the preliminary injunction. "A stay is an intrusion into the ordinary processes of administration and judicial review." *Nken v. Holder*, 556 U.S. 418, 435, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009) (citation omitted). To determine whether to stay the grant of a preliminary injunction, we balance four factors: the movant's likelihood of success on appeal; whether irreparable injury to the movant will result in the absence of a stay; prospective harm to others if a stay is granted; and the public's interest in granting a stay. *See Mich. Coal. of Radioactive Mat. Users, Inc. v. Griep-*

*entrog*, 945 F.2d 150, 153 (6th Cir. 1991). "The first two factors ... are the most critical." *Nken*, 556 U.S. at 434, 129 S.Ct. 1749.

■ The crux of this case is whether transgender students are entitled to access restrooms for their identified gender rather than their biological gender at birth. To demonstrate a likelihood of success on the merits, the movant must show, "at a minimum, serious questions going to the merits." *Mich. Coal.*, 945 F.2d at 153 (internal citation omitted). "It is not enough that the chance of success on the merits be better than negligible." *Nken*, 556 U.S. at 435, 129 S.Ct. 1749 (citation omitted). "[M]ore than a possibility of relief is required." *Id.* While the Supreme Court has stayed a similar case from another Circuit, *see G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, — U.S. ——, 136 S. Ct. 2442, 195 L.Ed.2d 888 (2016) (Mem), that fact does not satisfy the test required of us here, and does nothing more than show a possibility of relief, which is not enough to grant a stay.

Furthermore, Doe's personal circumstances—her young age, mental health history, and unique vulnerabilities—and her use of the girls' restroom for over six weeks, which has greatly alleviated her distress, differentiate her case from *Gloucester County*. Permitting Highland to again single her out, and disrupt the status quo, is distinct from the stay granted in *Gloucester County*, which maintained the status quo as opposed to disrupting it. Maintaining the status quo in this case would protect Doe from the harm that would befall her if the injunction is stayed.

■ We are not convinced that Highland has made its required showing of a likelihood of success on appeal. Under settled law in this Circuit, gender nonconformity, as defined in *Smith v. City of Salem*, is an individual's "fail[ure] to act and/or identify with his or her gender. . . ."

Sex stereotyping based on a person's gender non-conforming behavior is impermissible discrimination." 378 F.3d 566, 575 (6th Cir. 2004); *see also Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir.2011) ("A person is defined as transgender precisely because of the perception that his or her behavior transgresses gender stereotypes."); *G.G. ex rel. Grimm v. Gloucester County. School Bd.*, 822 F.3d 709, 729 (4th Cir.2016) (Davis, J., concurring) ("[T]he weight of authority establishes that discrimination based on transgender status is already prohibited by the language of federal civil rights statutes, as interpreted by the Supreme Court.").

Further, we are not convinced that Highland's allegations of harm rise to the level of irreparable harm. *See Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) ("The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough."). Thus, Highland fails to meet its burden of proving the two "most critical" factors required of our balancing test.

■ However, the record establishes that Doe, a vulnerable eleven year old with special needs, will suffer irreparable harm if prohibited from using the girls' restroom. Her special education class, which previously used the nurse's restroom to accommodate Doe, has started using the sex-separate multi-user restrooms now that Doe can use the girls' restrooms. Highland's exclusion of Doe from the girls' restrooms has already had substantial and immediate adverse effects on the daily life and well-being of an eleven-year-old child (i.e. multiple suicide attempts prior to entry of the injunction). These are not distant or speculative injuries—staying the injunction would disrupt the significant im-

provement in Doe's health and well-being that has resulted from the injunction, further confuse a young girl with special needs who would no longer be allowed to use the girls' restroom, and subject her to further irreparable harm.

■■■ Lastly, public interest weights strongly against a stay of the injunction. The district court issued the injunction to protect Doe's constitutional and civil rights, a purpose that is always in the public interest. *See, e.g., G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994); *Cohen v. Brown Univ.*, 991 F.2d 888, 906 (1st Cir. 1993) ("[T]he overriding public interest l[ies] in the firm enforcement of Title IX."). Thus, a stay is improper in this case.

The motion for leave to file the declaration of Steven O'Ban under seal, including the attached exhibits, is **GRANTED** in part. Only those documents filed under seal in the district court that are electronically inaccessible shall be maintained under seal in this court. Highland is **DIRECTED** to file a public version of O'Ban's declaration redacting only those documents filed under seal in the district court within seven (7) days of the date of entry of this order. The motion for leave to file a sur-reply is **GRANTED**, and the clerk shall **FILE** Doe's tendered sur-reply. The motion to stay is **DENIED**.

## DISSENT

SUTTON, Circuit Judge, dissenting.

The district court held that Title IX requires federally funded schools to permit transgender students to use the public bathrooms of their choice. In response, the school board sought a stay of that decision, which the district court denied and which my colleagues now deny as well. I must respectfully dissent.

The Supreme Court recently faced the same issue and granted the same request. As in this case, a transgender student filed an action under Title IX to enjoin the school district from preventing such students from using the bathroom of their choice. As in this case, the district court granted relief in favor of the student. *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, No. 4:15–cv–54, 2016 WL 3581852 (E.D. Va. June 23, 2016). And as in this case, the district court and court of appeals refused to stay the decision pending further review. *See* 654 Fed.Appx. 606 (4th Cir. 2016). The school district filed a stay request with the Supreme Court while the Court considered the school board's petition for review of the Fourth Circuit's Title IX decision. On August 3, 2016, the Court granted the stay. 136 S.Ct. 2442. And on October 28, the Court granted the petition. No. 16–273, 2016 WL 4565643, at *1. The Court presumably will hear argument in the case this Term. The stay will remain in effect until the Court resolves the issue.

The only material difference between this stay request and the stay requests in *Gloucester County* is that the Supreme Court has now *granted* the school board's certiorari petition—something the Fourth Circuit could not have known at the time it acted and something the district court in our case did not know at the time it acted. But that distinction makes a stay *more* appropriate in our case. Just as the plaintiff in *Gloucester County* must wait for Supreme Court review before changing the status quo, so should the plaintiff in our case be required to wait for that decision before changing the status quo. Similar treatment of similar plaintiffs is the essence of equal justice under law.

That is all anyone should need to know to resolve this matter. Ours is a hierarchical court system, one that will not work if

the junior courts do not respect the lead of the senior court.

Let me add three other points for the sake of completeness: (1) a reference to the standard for granting a stay, (2) its application to a recently completed area of institutional litigation, and (3) a brief response to my colleagues' efforts to distinguish this case from *Gloucester County*.

A stay is appropriate if the petitioner demonstrates a reasonable probability that the Court will grant certiorari and reverse the decision below and that denying the stay would inflict irreparable harm on the petitioner. *Maryland v. King*, —— U.S. ——, 133 S.Ct. 1, 2, 183 L.Ed.2d 667 (2012) (Roberts, C.J., in chambers). When the Supreme Court stayed the judgment in *Gloucester County*, it necessarily found that the school board was reasonably likely to succeed on the merits and that it would suffer irreparable harm without a stay. So, it follows, in our case.

The setting of today's stay request is reminiscent of another set of individual-rights cases with some parallels to this one. After the Supreme Court invalidated the Defense of Marriage Act in *United States v. Windsor*, —— U.S. ——, 133 S.Ct. 2675, 186 L.Ed.2d 808 (2013), several district courts recognized a right to same-sex marriage under the Fourteenth Amendment. In the aftermath of those decisions, the Court had to decide whether to let those decisions go into effect immediately or to stay them pending the States' certiorari petitions. The Court stayed the first of the decisions. *Herbert v. Kitchen*, —— U.S. ——, 134 S.Ct. 893, 187 L.Ed.2d 699 (2014). Our court, notably, followed suit by staying a series of district court decisions recognizing a right to same-sex marriage. *DeBoer v. Snyder*, No. 14–1341 (6th Cir. Mar. 25, 2014) (order). We should take the same path here.

Several other courts of appeals took the same cue and granted similar stay requests. In one of those decisions, Judge Hurwitz of the Ninth Circuit persuasively explained how he saw it. He acknowledged that he would have come to a different conclusion if the motion for a stay had come to him on a "clean[ ] slate," and he acknowledged that an unexplained stay order by the Supreme Court did not technically bind him in a different case. *Latta v. Otter*, 2014 U.S. App. LEXIS 16057, at *15 (9th Cir. May 20, 2014) (Hurwitz, J., concurring). But he nonetheless felt obligated to grant a stay in light of the Court's "clear message" that a stay was warranted. *Id.* at *17. The Supreme Court vindicated Judge Hurwitz's reasoning when it reversed the courts that departed from this path by refusing to grant stays while petitions for certiorari were pending. *E.g.*, *McQuigg v. Bostic*, —— U.S. ——, 135 S.Ct. 32, 189 L.Ed.2d 884 (2014); *see* William Baude, *Foreword: The Supreme Court's Shadow Docket*, 9 N.Y.U.J.L. & Liberty 1, 7–8 (2015). The lesson is straightforward: The lower courts should adhere to the Supreme Court's stay decisions when faced with indistinguishable claims. If anything, the case for following the Supreme Court's lead is stronger here because the Supreme Court has already granted review in *Gloucester County*.

My colleagues try to distinguish *Gloucester County* on three grounds. They first argue that there is some Sixth Circuit law that applies Title VII to gender non-conforming employees. But that reality is no more relevant than the Fourth Circuit's holding in *Gloucester County* that a transgender individual has a right under Title IX to use the bathroom of their choice. They next point out that the plaintiff in *Gloucester County* was seventeen while the plaintiff here is eleven and has had more mental-health challenges. True, there are differences between children who are seventeen and eleven, just as there are differences between children who are nine

and fifteen. True also, some children have greater mental-health needs than others. But I suspect that the Supreme Court's decision on the merits in *Gloucester County* will apply the same rule to all of them regardless of their age or the level of counseling they require. My colleagues next argue that the status quo has changed because the school board has complied with the district court's injunction for six weeks. But the status quo at issue in a stay motion is the lay of the land before the district court's decision—whether here or in *Gloucester County*, whether it takes over six weeks to resolve the various stay motions (as here) or five weeks (as in *Gloucester County* ). A contrary rule would reward delay by the courts and the party opposing the stay, and would punish parties who *comply* with court orders.

The Supreme Court presumably will resolve the Title IX issue in 2017. In the meantime, the Court has indicated that we should wait for further instructions before granting relief on these sorts of claims. These lawsuits pose novel questions and, if successful, will require novel changes to school restrooms and locker rooms. If past is precedent, the Court does not want a patchwork of provisional answers to emerge while it deliberates.

Which leads to one last consideration. If we decline to respect the Supreme Court's lead in granting a stay request in precisely the same type of case, why should we expect the district courts in our circuit to respect *our* lead in granting stay requests in related cases? Middle-management courts that ignore instructions from a higher court will eventually learn how it feels and how poorly such a system works.

I respectfully dissent.